Call the first case. Case number 080555, Anton Zaycic v. James R. Davis, M. Step up, please. Both sides. Please identify yourselves. Mike Slovis on behalf of the appellate jury. Leslie Rosen on behalf of the Plankton family. All right. It's 15 minutes per side, and please try and keep it to the time limit. We have four arguments this morning, and we're hard pressed for time. Your Honor, does the court permit rebuttal? Is it just 15 minutes? No, you get maybe four or five minutes. Okay. May it please the court? It may. Counsel? Your Honor, this was a medical malpractice case that involved a repair of a humerus fracture. In order to prove a medical malpractice case, the court is aware, the plaintiff must establish standard of care, a deviation from such standard, damages, and an approximate cause of those damages. Supreme Court Rule 213 governs the disclosure during the discovery process and the limitations for which witnesses may present such testimony. In this case, 213 was established by the legislature to create an even playing field to prevent prejudice and sandbagging. In this case, Plankton's sole liability expert was Dr. James Resch. So the court understands the brief timeline of the events. On May 14th, 2001, there was an accident which led Mr. Zakin to the hospital. He had a broken humerus. May 14th to May 17th, he was involved in a hospital stay. There was a motion to eliminate granted which said that Dr. Resch would not criticize the care rendered during that hospital stay. Mr. Zakin then had his first post-visit with my client on June 5th, 2001. My client was Dr. Davis. At that time, both Dr. Davis recommended surgery and Mr. Zakin wanted to undergo surgery. Dr. Resch, the liability expert who disclosed this in 213, said between June 5th, 2001 and June 19th, 2001, the recommendation for surgery was appropriate. That was the window for the recommendation for surgery and whether or not surgery should proceed. On June 11th, 2001, there is a note in the chart which talks about scheduling that surgery. It is that note and that telephone message which is the crux of this appeal which was borrowed. Motion to eliminate number 16 is crucial in this case, Your Honor. Why is this the most relevant point in this case? In fact, he was asked after June 5th, 2001 when he recommended surgery and the patient said he wanted to get surgery, you don't have an opinion if he did enough or not enough to make sure that the patient got walked over to where surgery was taking place because you don't know about the interaction between the insurance company and what was going on with the hospital, do you? And in his deposition, Dr. Resch said, correct, I do not have such an opinion. The court heard that motion and allowed Dr. Resch to testify that Dr. Davis then had a duty not only to recommend surgery but to schedule surgery. We submit to the court that that was in violation of 213. It wasn't a logical corollary. In fact, it was a new theory because Dr. Resch said himself, I do not have such an opinion. Once the court, Your Honor, allowed this testimony in, the court then bootstrapped the defendant because they did not let the defendant present affirmative contemporaneous evidence that Dr. Davis was aware of what was going on with the schedule. Was there an objection to the testimony of Dr. Resch? Yes, Your Honor. There was such an objection. There was a motion to eliminate Roth prior to this and then there was objection as each of that testimony went in and there was offers of proof throughout the trial regarding this issue. In fact, at various points, we said the door has now been opened. You have to let this evidence in. The court is aware that in a medical malpractice case, the physician is judged by his reasonable thought process at the time. Wilson v. Clark allows both experts to examine, informing their opinion, everything that physician looked at at the time. What was the physician aware of? The business records exception and the comments to it now allow medical records. Your Honor, there was no legal basis to it. I understand. What do medical records have to do with Wilson v. Clark? Wilson v. Clark allows experts to look at things of which the doctors relied upon at the time. Well, of course. Wilson v. Clark adopted rules 703 and 705, but that doesn't make the records substantially admissible. I mean, they could give their opinions based upon anything a reasonable expert would look at. Yes, Your Honor. In this case, that is true in Wilson v. Clark. In this case, the one excluded document was part of the medical records. It should have been allowed pursuant to the medical records business exception. It was part of the office chart of Dr. Davis. It was something he relied upon to realize that surgery was being scheduled. It was a contemporaneous note. And once the court allowed Dr. Brett to testify that Dr. Davis should have taken affirmative steps to schedule that surgery, they should have, which I believe was a wrong ruling and where the court should then stop at that ruling, but once he allowed that, then in all fairness, he had to allow that note to come in. There was no legal basis, and if you look at plaintiff's brief, there's no case law which supports excluding that note. In medical malpractice cases, doctors rely on the medical records in giving their testimony, nurses' notes. There's no hearsay exception in this case. This was a note in Dr. Davis' office chart which described an interaction between the family and his staff about scheduling surgery. It was a reasonable basis for him to understand what was going on with that scheduling. And in order to inform the jury about what Dr. Davis was thinking, and if Dr. Davis was aware that surgery was going forward, it was incumbent on the jury to see that note. And there was no reason for it to be excluded, not one legal basis. The reason the schedule wasn't scheduled had to do with an insurance problem, is that right? Well, the reason it wasn't scheduled in that note discussed insurance, but the case law which talks about excluding information because of insurance, wealth, and poverty is not an absolute. That goes to show that the jury will not be prejudiced against that individual. Isn't that a matter of discretion, then, for the trial judge? It should not be in this case, Your Honor, because it was so overwhelmingly prejudicial and was a factual issue. And in fact, if you look at the cases, the prejudice would be to my client to have that information regarding insurance in because he was prohibited from getting a surgery. So the wealth and poverty issue has to do with the prejudice. There could have been a limited instruction, but in order to limit the sole issue that really went to the jury regarding the scheduling of the surgery and not allow my client to then defend himself, when throughout the trial, the cross-examination of both my client and the expert, it was, did you schedule surgery, what did you do, you didn't do anything, you can't show the jury anything. And in fact, he was able to show the jury something, but was told continually that he could not do it. Go ahead. Dr. Bresch also testified that there was another way to treat this injury, shorter surgery. If surgery was not available, that there was another way to treat the plaintiff's injury so that it would not result in such a bad outcome. The manipulation. Yes. The problem with the manipulation theory is if doctor, if the plaintiff said he was not going to go forward with surgery, in this case, the plaintiff chose to go forward with the surgery. And Dr. Davis and both agreed they would move forward with the surgery. Manipulation in both their minds then was not the preferred option. They were trying to, that's my point, they were trying to schedule the surgery and working to do that. Well, once surgery was not forthcoming, did the doctor have an obligation to do something at that point, shorter surgery, or just let it go? And in fact, what happened was, and if you look at the July 5th note, what Dr. Davis said, I still want to do surgery. The note on July 5th said, we're still willing to do surgery, and the patient said he's trying to work out some issues. Now, the court redacted the issue regarding financial issues, but Dr. Davis didn't abandon this patient. On the contrary, what he did was, the patient's choice was to go forward with surgery. And we were not allowed to put that information on the scheduling, but Dr. Davis, on both the June 5th and July 6th notes, with the patient, reported, I want to do surgery, let's work for it, and the patient said, I want to proceed with surgery. So manipulation was then conveyed to the patient, and was not really an option because he chose surgery. The theory of, there are two theories of liability in this case. One was a failure to inform, and the other was a failure to diagnose and treat. Your argument doesn't seem to attach at all to the failure to inform and the jury's verdict here. We don't know which theory they bought. There was no special interrogatory. First of all, in respect to a general verdict, I would submit to the court that if the evidence on one issue is overwhelming, the court can then not rest on the fact that the jury could have come back with one of the other issues. But I would submit to the court. We could affirm on the general verdict alone, could we not? Well, if the court was going to do that, based on the argument in this case, based on the focus which was directed at the scheduling, I believe is improper, and I believe that the jury should have been given the opportunity to see all the evidence. With respect to the other issues regarding informed consent, Your Honor, and the surgery itself, the diagnosis, I would submit to the court that the plaintiff did not meet his proximate cause threshold in that respect. Informed consent was, did you inform the patient on the options presented? And the issue was, did you inform him in the hospital stay? He wasn't informed of all the issues, eventually, because he chose the surgical procedure. And he was advised of all the options, manipulation or surgery. He chose surgery, recorded within the note. And as far as the diagnosis goes, what Dr. Bresch, their expert, said, the definitive treatment for this was surgery. Surgery was recommended. I believe that it was the issues in this case, Your Honor, revolve around the scheduling of the surgery, because once Dr. Davis on June 5th and throughout the hospital stay recommended surgery and the patient consented, the informed consent issue does not meet any of the proximate cause thresholds or burdens, Your Honor. I would submit to the court that the closing argument, in two respects, was highly prejudicial. Cumulative nature of the personal attacks on the expert, plaintiff's expert, and the defendant, in addition to trial counsel giving his opinions on what things show, giving his opinions on credibility, telling the jury that the defendant did not man up, did not come forward, and in his opinion he would never use this expert is highly prejudicial, Your Honor. And the second issue regarding the closing argument actually began in opening statements. It has to do with the issue regarding the jury instruction and the issue regarding the role of the jury in using their common sense. There is an instruction that the jury is to use their common sense, but the issue regarding common sense is in a medical malpractice case that you have to use your common sense in analyzing the credibility of the experts. You cannot substitute that common sense for expert testimony. And if you read plaintiff's closing argument, in fact, if you read his statement in opening, when he says you can use your common sense and you don't even have to get to the opinion of Dr. Bresch, and then in closing argument, he basically told the jury to disregard expert testimony and use your common sense. I believe those are so highly prejudicial taken in the cumulative nature, Your Honor, in addition to the other issues, would ask the court to overturn the verdict in this case. Thank you. Good morning, Your Honors. Again, Leslie Rosen. From the get-go, defense counsel was a little misleading. He said this was a case about a broken humorist. This was not just a case about a broken humorist. This was a guy who comes to the hospital. The EMT notices that he's got a shoulder deformity. The medical student notices that he's got a shoulder deformity. The doctor does not notice the shoulder deformity. And from that flows all the negligence. This is a case primarily about informed consent. I was wondering, because I was wondering if we had two different cases here. He mentioned nothing about any of these things. It seems we do, because that's what this case was about. He didn't bother to talk about the EMT. He didn't talk about the other doctor. Well, Dr. Davis testified he didn't have to pay attention to the medical student's note. That wasn't his job. He didn't have to. But you know what? Even if he didn't, he had a duty to examine the patient and look at it. Our doctor, Dr. Brush, testified to numerous deviations from the standard of care. And I apologize. I have to look at my notes because they're so numerous. Wasn't he more concerned with the ankle at that point? Yes. Yes. And that's unfortunate. He did a good job on the ankle. The ankle is fine. And because of that, as Dr. Brush testified, he didn't see the whole picture. He did have to operate on the ankle within six to eight hours. And he did that because that was an open fracture and that was a problem. But that does not excuse his failure to see the whole picture. And that's what this case is about. He did a fine job on the ankle. And had there not been a shoulder injury, then what he had done with the arm would have been okay for starters, too. But there was a shoulder injury. And Dr. Brush testified that because of that, that shoulder injury, that Dr. Davis deviated from the standard of care in the following ways. He failed to examine the joint above and below an obvious shoulder injury. He said when you've got a broken humerus here, you've got to look below the elbow and above it and above the joint here. He failed to examine the shoulder and get the proper x-rays. He failed to be suspicious of the AC injury. He failed to tell the patient the AC injury. And if the AC injury was there and everybody agrees it was there because it couldn't have happened out of the blue, he had a duty to inform Tony of the options. And this never happened. Finally, he failed to inform Tony of the timing issues. And the information he most significantly that he provided to the plaintiff was incomplete because there was no awareness of the shoulder injury. And because of that, Tony was unable to make an informed decision about what to do about his case. Did the plaintiff suffer any injury as a result in the delay in treating the AC separation? He's got a permanent injury. It's never been treated. It wasn't by the time Dr. Davis never even noticed the AC separation until September when it was way, way too late. The arm had to be treated, you know, within six to eight weeks. And what happened here is that because he first put a sling on it and then put a cast, Dr. Brush testified that that encouraged downward traction. And because of that, that caused the clavicle to rise up higher and that exacerbated the condition and created a permanent injury. And I think the most interesting question here is, you know, how do you prove a negative? In this case, Tony didn't have informed information on which to make a decision. So the question is, well, should he have testified? Oh, absolutely. If I had been told about this, I would have said, do that surgery right now before I leave the hospital. Well, that couldn't have happened. That's pure speculation. What the case law provides and what the IPI provides is that in an informed consent case, you have to ask what would the reasonably prudent person do under the circumstances. Defendant says in his brief, ah, but Tony, he said, no, I don't want the surgery when I'm in the hospital. Dr. Shingles, the resident, offered him the surgery when he was in the hospital and he said no. Well, why did he say no? The same reason any of us would have said no. All he was told was, well, we can put a rod in or we can just cast it. And Tony says, well, what's the difference? Oh, two weeks. Just two weeks in terms of healing. Well, in those facts, you'd say, well, why would I get surgery? I'll just take two more weeks out of my life. It's not going to be a big deal. But it turned out it was a huge deal. And the standard, so the standard of care required him to get these things, to diagnose it and to inform him. Most interestingly, Dr. Brush did testify that the standard of care required Dr. Davis to schedule the surgery on June 5th and proceed with the plan. And that, according to defendants, is a big to-do here. But if you look at the record, Volume 5, page C240, you will see that there was no objection at that point. And the bottom line is, beside that, not only is it waived because there was no objection, even though there was a motion to eliminate, which we all know is an interlocutory ruling, there was no objection. And so it came in. But beyond that, even if it shouldn't have come in, which I vehemently disagree with, there was no problem here. Plaintiff didn't belabor the point. And he never criticized Davis for not doing more to schedule the surgery. Never. And defendant doesn't point to any question or answer where that happened and no objection to it. And it never happened. And so Bresch did testify also, in case you're concerned about whether there was a break in the proximate cause, Link, thank you, that there was none because Bresch testified that there would have been a better result and the jury was properly allowed to find that a reasonably prudent person would have made a different decision had he been given the opportunity to do that. Counsel, what about counsel's comments about the general verdict? He's wrong. You're right. There was a general verdict. You could find that there was no special interrogatory here. You don't know what the basis was of the jury's verdict. It could have been purely uninformed consent, and that would have been very rational in this case. They could have filed special interrogatories. They didn't do so. So for counsel to say that the crux of this appeal is whether that note should have been put in the phone message is wrong. There was no admissible evidence in this case that they had no admissible evidence that it should have come in that there was financial problems and insurance prevented the surgery. Your honors were quite right. The doctor had a duty. That's what was here. There was no issue, by the way, of abandoning your patient. If you look in the beginning of the record and in the record, right before trial, plaintiff tried to amend the complaint to add an abandonment issue, and defendant filed a motion to strike that. And that would have brought in, if there had been an abandonment, then it would have brought in a financial matter because then defendant could have said, hey, I wanted to do it, but you wouldn't pay. You can't expect me to do it for nothing. But that wasn't the crux of the abandonment. It wasn't abandonment, but he did have a duty to do something. And there was talk of manipulation, although it would not be a treatment you would want. You would still take it over nothing, perhaps, if you were offered it. In this case, the plaintiff was never offered manipulation. And by June 11th, the doctor knew the surgery wasn't looking to go forward. Had he called Tony up and said, hey, I'm sorry to tell you, the hospital won't schedule the surgery, they could have talked about other options. But no phone call was made by anybody in that office. Manipulation was never offered. And had that happened, he might have had a straight arm today. He could have done that in the office with sedation. It would have been rather painful to have your humerus pushed around. But it was an option instead of a permanent injury here. Also, the jury heard numerous times that this was not Dr. Davis' fault. So in defendant's brief, he talks a lot about this involved the credibility. This was crucial to the doctor's credibility. But that's not true in the slightest way, because there was no issue about the doctor's credibility on this. First, Dr. Davis testified that he did everything he could to schedule a surgery, but the hospital would not give him a date. That's all that was relevant here. That was it. Next, a cross-examination. Dr. Bresch admitted that the record showed that the office staff had attempted to schedule the surgery, but it had never taken place. And at this point, defense counsel asserted that the note, the note that wasn't admitted, specifically stated that the family was working with the hospital. I will say there was an objection to this, and it was sustained, but the comment was not stricken. Third, defense counsel's expert, Dr. Groskopf, testified that Dr. Davis' actions for scheduling the surgery met the standard of care, and that the record showed that the office tried to schedule it, and that it was Tony's fault, that he had responsibility. And then finally, in closing argument, defense counsel argued that Davis' office tried to schedule the surgery. So to me, even if there was any error, and there wasn't because it was just hearsay inside the record, it was hardly reversible because the jury heard it four times. Four times they heard this, and that should be significant. Finally, on this point, defendants argued again today that there could have been a limiting instruction given, but nowhere in the record did he ask for a limiting instruction. Nowhere. You look, you won't see it. He says it on page 15. And I just don't think that based on this record, you can fairly say that the jury was left with the impression that the doctor was a liar. It was never intimated, stated, inferred. Whatever you want to say wasn't there. So finally, let's take a second. The closing argument, it's not reversible error. The plaintiff never said the defendant expert was a hired gun. He fairly commented on the fact that the defense counsel prepared the answers to his interrogatories and that the defendant's expert never even saw his answers until he got to the deposition. He never asked the court to strike any of those improper comments that are disregarded. And you see that Judge Bender commented on that on the record in the post-trial hearing. And to say that he was denied a fair trial because Mr. Mirabali said that Dr. Davis didn't man up to his mistake is just silly, I have to say. I mean, that's just a colloquialism. It doesn't infer anything about his, I don't even know what it's supposed to say. He's not manly? I don't know. It's just ridiculous. And while I will say that maybe vouching for your own expert's credibility is not a good practice, it's not reversible error. So any further questions? Thank you very much. Thank you. One question, Your Honor. Counsel just said if a phone call was made to the patient about other options, that would have met the standard of care. In this case, the record says that there was conversations with the family about setting up the schedule of the surgery, and that was prohibited. Your Honor, I did not intend to mislead this Court by saying we're arguing two different cases. On the contrary, their expert said the conduct in the hospital met the applicable standards of care. There was a motion in limine that said the conduct in the hospital met the applicable standards of care. Their expert said with respect to informed consent and with respect to treatment of the AC fracture, all they needed was a surgery. Therefore, we're left with the third issue, and the issue was fail to schedule surgery. I believe we're arguing the same case to the Court, but it all came down to the decision to issue failure to schedule that surgery, and that's why when you talk about conversations within the hospital state, in all honesty, they're irrelevant based on Dr. Brush's testimony and based on the motion in limine that the conduct was met within the hospital state from a proximate cause standpoint and from a liability standpoint. Thank you. Thank you. The matter will be taken under advisement.